UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LASSANA MAGASSA,

       *Plaintiff*,

  v.

TRANSPORTATION SECURITY
ADMINISTRATION,

       *Defendant*.

Civil Action No. 23‑2526 (LLA)

**MEMORANDUM OPINION**

This matter is before the court on a motion for summary judgment filed by Defendant, the Transportation Security Administration ("TSA"), ECF No. 13, and a cross-motion for summary judgment filed by Plaintiff Lassana Magassa, ECF No. 15. Mr. Magassa claims that TSA violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Administrative Procedure Act ("APA"), *id.* § 551, *et seq.*, by unlawfully withholding responsive records related to the revocation of his airport security credential, ECF No. 1. Upon consideration of the motions and supporting documentation, the court will grant Defendant's motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are undisputed. Mr. Magassa worked as a Cargo Customer Service Agent for Delta Airlines. ECF No. 1 ¶ 7. As part of his employment, he was required to obtain and maintain a Security Identification Display Area ("SIDA") badge. *Id.* ¶ 8. In October 2016, TSA revoked Mr. Magassa's SIDA badge and he lost his job at Delta Airlines. *Id.* ¶ 9.

Mr. Magassa challenged the revocation of his SIDA badge through the designated appeals process. *Id.* ¶ 10.

In February 2020, Mr. Magassa submitted a FOIA request to TSA for the disclosure of:

> Records relating to TSA Inspector reports or notes concerning Lassana Magassa at SeaTac International Airport, from September 2019 to present day; and
>
> Records relating to aviation-worker credentials and/or Security Identification Display Area (commonly referred to as "SIDA") badges Mr. Magassa obtained, and/or any revocation of the same, through all employment positions he has held at SeaTac International Airport, from January 2015 to present day.

ECF No. 1-1, at 2-3; *see* ECF No. 1 ¶ 14; Declaration of Teri Miller (Apr. 10, 2024) ("Miller Decl."), ECF No. 13-3 Ex. 1 ¶ 4.  TSA responded to Mr. Magassa's request the day after he submitted it, informing him that it did not require additional clarification and documentation to process his request.  ECF No. 1 ¶ 16; ECF No. 1-2, at 2-3.  For more than two years, Mr. Magassa received no further communication from TSA on the status of his FOIA request.  ECF No. 1 ¶ 18.

In April 2022, Mr. Magassa emailed TSA requesting an update on his FOIA request.  *Id.*; ECF No. 15-1, at 6-7.  TSA responded with an estimate that it would complete Mr. Magassa's FOIA request within 180 days.  ECF No. 1 ¶ 19; ECF No. 15-1, at 9-10.  A few months later, in June, Mr. Magassa filed an administrative appeal claiming that his request had been constructively denied.  ECF No. 1 ¶ 20; ECF No. 15-1, at 12.  TSA acknowledged the appeal via email but provided no further update on the status of his FOIA request.  ECF No. 1 ¶¶ 21-22; ECF No. 15-1, at 13.  Mr. Magassa contacted TSA again regarding the status of his FOIA request in October 2022.  ECF No. 1 ¶ 22; ECF No. 15-1, at 16.

In January 2023, TSA's Deputy Assistant Administrator of Civil Rights & Civil Liberties, Christine Y. Griggs, informed Mr. Magassa that his FOIA request was still pending and that "there was no administratively appealable action for Ms. Griggs's office to consider."  ECF No. 1 ¶ 23;

2

ECF No. 15-1, at 19-20. Her correspondence further indicated that he could seek judicial review of an untimely response. ECF No. 1 ¶ 24.

In May 2023, Mr. Magassa sent a third email to TSA requesting a status update on his FOIA request. ECF No. 1 ¶ 25; ECF No. 15-1, at 22-24. In June, TSA replied that the FOIA branch was "working through a backlog" and fulfilling Mr. Magassa's request would take another estimated 60 to 120 days to process. ECF No. 1 ¶ 26.

In August 2023, Mr. Magassa filed this action.[1] ECF No. 1. He alleges that TSA violated FOIA by failing to timely respond to his request, ECF No. 1 ¶¶ 31-40; *see* 5 U.S.C. §§ 552(a)(6)(A)(i), 552(a)(6)(B)(i), and that TSA wrongfully withheld nonexempt responsive records in violation of FOIA and the APA, ECF No. 1 ¶¶ 41-56. Mr. Magassa seeks declaratory, injunctive, and mandamus relief, as well as fees and costs. ECF No. 1 ¶¶ 40, 49, 56, 65, 70.

TSA ultimately located 576 pages of records responsive to Mr. Magassa's FOIA request. Miller Decl. ¶ 19. In November 2023, TSA provided Mr. Magassa with 521 pages in full, withheld thirty-eight pages in part under FOIA Exemptions 3, 5, 6, and 7(C), and withheld seventeen pages in full under Exemption 3. *Id.* ¶ 20; ECF No. 13-3 Ex. C. TSA also provided a *Glomar* response, stating that "TSA can neither confirm nor deny the existence of records relating to individuals named on any Federal government Watch List." Miller Decl. ¶ 20; ECF No. 13-3 Ex. C, at 2.

---

[1] The court takes judicial notice of several other suits Mr. Magassa has filed concerning the revocation of his airport privileges, all of which have been resolved against him. *See Magassa v. Transp. Sec. Admin.*, No. 19-CV-1953, 2022 WL 971207 (D.D.C. Mar. 31, 2022), *aff'd*, No. 22-5155, 2023 WL 8826564 (D.C. Cir. Dec. 21, 2023) (per curiam) (granting TSA's motion for summary judgment in a FOIA case); *Magassa v. FBI*, No. 19-CV-1952, 2023 WL 5174335 (D.D.C. Aug. 11, 2023), *aff'd*, No. 23-5235, 2024 WL 5221092 (D.C. Cir. Dec. 26, 2024) (granting the FBI's motion for summary judgment in a FOIA and Privacy Act case); *Magassa v. Wolf*, 545 F. Supp. 3d 898 (W.D. Wash. 2021), *aff'd*, 52 F.4th 1156 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 279 (2023) (dismissing Mr. Magassa's APA and Fifth Amendment claims for want of jurisdiction and failure to state a claim).

In December 2023, the case was reassigned to the undersigned. Docket, No. 23-CV-2526 (D.D.C. Dec. 14, 2023). After twice conferring about TSA's search and withholdings, ECF No. 14, at 2, the parties filed cross-motions for summary judgment, ECF Nos. 13, 15, which have been fully briefed, ECF Nos. 13 to 17, 19.

At this stage of the litigation, Mr. Magassa does not challenge the adequacy of TSA's search or TSA's withholdings under Exemptions 6 and 7(C). ECF No. 14, at 9-11. Accordingly, the only issues before the court are the propriety of TSA's withholdings under Exemptions 3 and 5 and whether TSA has shown that it reasonably segregated nonexempt information from information subject to withholding under Exemptions 3 and 5. *See* ECF No. 15, at 3-5 (challenging TSA's withholdings and segregability under Exemptions 3 and 5).

## II.   LEGAL STANDARDS

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Congress nonetheless included nine exemptions to disclosure that "are intended to balance the public's interest in governmental transparency against the legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Tipograph v. U.S. Dep't of Just.*, 83 F. Supp. 3d 234, 238 (D.D.C. 2015) (alteration in original) (internal quotation marks omitted) (quoting *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010)). Additionally, in certain circumstances, an agency "may refuse to confirm or deny the existence of [responsive] records." *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. Cent. Intel. Agency*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)). A response of this kind is commonly referred to as a *Glomar* response, and it "is valid 'if the fact of the existence or

nonexistence of agency records falls within a FOIA exemption.'" *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Wolf*, 473 F.3d at 374).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The agency invoking a FOIA exemption bears the burden of demonstrating that it applies. *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989); *see Knight First Amend. Inst. v. Cent. Intel. Agency*, 11 F.4th 810, 813 (D.C. Cir. 2021) (same for providing a *Glomar* response). Summary judgment may be awarded to the agency if it can demonstrate that no material facts are in dispute, that it conducted an adequate search for responsive records, and that each record has either been produced or is exempt from disclosure. *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 59 F. Supp. 3d 184, 189 (D.D.C. 2014). This burden is met when agency affidavits or declarations "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf*, 473 F.3d at 374-75 (quoting *Gardels*, 689 F.2d at 1105). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Manna v.*

*U.S. Dep't of Just.*, 106 F. Supp. 3d 16, 18 (D.D.C. 2015) (quoting *Span v. U.S. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010)).

### III.   DISCUSSION

#### A.   Exemption 3

TSA withheld forty-eight pages in whole or in part pursuant to Exemption 3 on the basis of 49 U.S.C. § 114(r).  Miller Decl. ¶ 21.  Exemption 3 allows an agency to withhold or redact records that are

> specifically exempted from disclosure by statute . . . , if that statute—
>
> > (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
> >
> > (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
> >
> > (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).  "The applicability of Exemption 3 depends on two questions: (1) 'Does the statute meet Exemption 3's requirements'; and (2) '[D]oes the information that was withheld fall within that statute's coverage?'"  *Magassa v. Transp. Sec. Admin.*, No. 22-5155, 2023 WL 8826564, at *1 (D.C. Cir. Dec. 21, 2023) (alteration in original) (quoting *Labow v. Dep't of Just.*, 831 F.3d 523, 527 (D.C. Cir. 2016)).

On the first question, the parties agree that the Homeland Security Act, 49 U.S.C. § 114(r), meets the requirements of Exemption 3.  *See* ECF No. 13-1, at 6-7; ECF No. 14, at 4.  Section 114(r) was enacted after the date of enactment of the OPEN FOIA Act of 2009, cites Section 552, and requires TSA to implement regulations requiring that certain information, known as Sensitive Security Information ("SSI"), be withheld when "disclosing the information would (A) be an

6

unwarranted invasion of personal privacy; (B) reveal a trade secret or privileged or confidential commercial or financial information; or (C) be detrimental to the security of transportation." 49 U.S.C. § 114(r)(1); *see* 49 C.F.R. § 1520 (implementing regulations); *see also Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 398 (2015) (explaining that Section 114(r)(1) allows an agency to deny a FOIA request).[2]

On the second question, Mr. Magassa argues that TSA has not sufficiently demonstrated that the withheld records fall within the scope of Section 114(r) or justified its *Glomar* response. ECF No. 14, at 5; ECF No. 15, at 3-5; ECF No. 19, at 2-3. The court addresses each in turn.

*Scope of Section 114(r)*. In support of its motion for summary judgment, TSA submitted two declarations and a *Vaughn* index detailing the reasons for its redactions. ECF No. 13-3, at 1-16; ECF No. 13-3 Ex. D; ECF No. 13-4, at 1-9 ("Esteves Decl."). Of particular relevance, Christian Esteves, Chief of the SSI Program of the Security and Administrative Services Office at the TSA, provided a detailed breakdown of the withholdings, identifying which regulations covered which records and explaining why the withheld records were SSI. Specifically, he explained that

- Thirty-nine pages were withheld in part or in full under 49 C.F.R. §§ 1520.5(b)(8)(i), (b)(9)(i), & (b)(9)(ii) because they "cover information about specific steps taken and sources used in TSA's security threat assessments, as well as results that may be used to determine Plaintiff's status on a watch list utilized by TSA for passenger pre-board screening (i.e., whether Plaintiff was or was not on such a list)," Esteves Decl. ¶ 12(a);

- Thirty-five pages were withheld in part or in full under 49 C.F.R. §§ 1520.5(b)(8)(i), (b)(9)(i), & (b)(9)(ii) because they "cover dates showing the applicable retention schedule, as well as dates and specific processing steps of Plaintiff's security threat assessments, either of which may be used to determine Plaintiff's status on a watch list utilized by TSA for passenger pre-board screening

---

[2] The parties further agree that this court lacks jurisdiction to review TSA's decision to designate information as SSI. ECF No. 13-1, at 8; ECF No. 14, at 4; *see Skurow v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 319, 331 (D.D.C. 2012).

- (i.e., whether Plaintiff was or was not on such a list)," Esteves Decl. ¶ 12(b) (footnote omitted);

- One page was withheld in part under 49 C.F.R. § 1520.5(b)(9)(i) because it "covers information about Plaintiff that may be used to determine Plaintiff's status on a watch list utilized by TSA for passenger pre-boarding screening (i.e., whether Plaintiff was or was not on such a list)," Esteves Decl. ¶ 12(c);

- Redactions were made to thirty-four pages under 49 C.F.R. § 1520.5(b)(6)(i) to protect "names, email addresses and/or phone numbers of low-level TSA Intelligence & Analysis employees involved in processing Plaintiff's security threat assessment(s), the release of which could result in harassment and/or retaliation for the processing and result of the security threat assessment and Plaintiff's experience with TSA," Esteves Decl. ¶ 12(d); and

- Redactions were made to five pages under 49 C.F.R. § 1520.5(b)(6)(i) to protect "names of Transportation Security Inspectors and related low-level TSA personnel involved in responding to and/or evaluating a potential security incident involving Plaintiff at the Seattle Tacoma International Airport the release of which could result in harassment and/or retaliation for the potential security incident and Plaintiff's experience with TSA related to the potential security incident," Esteves Decl. ¶ 12(e).

After explaining the withholdings and redactions in detail, Mr. Esteves explained that "[t]he public release of any portion of the information described above could enable terrorists to evade or circumvent transportation security screening procedures." Esteves Decl. ¶ 14. Specifically, "[i]t could enable those planning an attack on an aircraft to identify operatives who have or have not previously been identified as a threat." *Id.* He further explained that "withholding whether or not an individual is on a federal watch list used by TSA for passenger pre-board screening protects the operational counterterrorism and intelligence collection objectives of the Federal government and the personal safety of those involved in counterterrorism investigations," and that those objectives would be less effective if such information were disclosed. *Id.*

In addition to Mr. Esteves's declaration, TSA submitted a *Vaughn* index that described the records, the relevant FOIA exemption, and the relevant statute and regulations, and provided an additional explanation for the withholding. ECF No. 13-3 Ex. D (providing, for example, the page

8

numbers for records from TSA's "Consolidated Screening Gateway" that were withheld in part or in full, the applicable FOIA exemption, statute, and regulation, and a description of the material that was withheld or redacted).

Mr. Magassa contends that the above explanations were insufficient, asserting that TSA provided "only conclusory statements and affidavits that merely recite the legal standards." ECF No. 14, at 4; *see* ECF No. 19, at 2 (arguing that "[t]he Esteves Declaration provides only a broad overview of the redactions and the general range of pages where certain redactions appear, without tying any alleged harm to the security of transportation to any specific redaction"). That argument is difficult to square with the level of precision and detail in the Esteves declaration. For each class of records, Mr. Esteves identified the type of information that was being withheld or redacted and tied it to the relevant regulation. He then explained why disclosure of the information would be detrimental to national security.

Perhaps most fatally for Mr. Magassa, the D.C. Circuit recently—and soundly—rejected similar contentions in another of his FOIA cases against TSA. *Magassa*, 2023 WL 8826564, at *1. After reiterating that "an agency's justification for invoking a FOIA exemption must merely be 'logical' or 'plausible,'" *id.* (quoting *Wolf*, 473 F.3d at 374-75), the Circuit afforded "great deference" to "TSA's expert assessment" of threats to national security and held that TSA's explanation was "reasonable," *id.* (quoting *Cent. Intel. Agency v. Sims*, 471 U.S. 159, 179 (1985)). While the Circuit's decision was unpublished—and therefore non-precedential, *see* D.C. Cir. R. 36(e)(2)—it is persuasive authority that further supports the court's conclusion that TSA's explanations for its Exemption 3 withholdings were eminently reasonable.

Mr. Magassa's complaint about the *Vaughn* index fares no better. ECF No. 14, at 5 (arguing that "Defendant's *Vaughn* index groups multiple records together by broad categories to

9

justify its withholdings, failing to describe which description applies to which record"). While Mr. Magassa attempts to criticize TSA's *Vaughn* index as containing "categorical" withholdings, *id.*, this is not a situation where TSA provided "brief or categorical descriptions . . . to prevent the litigation process from revealing the very information the agency hopes to protect." *Am. C. L. Union v. Cent. Intel. Agency*, 710 F.3d 422, 432 (D.C. Cir. 2013). Instead, TSA's *Vaughn* index was "relatively specific in describing the kinds of documents the agency is withholding" and providing the reasons why. *Id.* But even if TSA had engaged in categorial withholding, it would have been permissible. *See Magassa v. Transp. Sec. Admin.*, No. 19-CV-1953, 2022 WL 971207, at *7 (D.D.C. Mar. 31, 2022), *aff'd*, No. 22-5155, 2023 WL 882654.

Glomar *response.* Mr. Magassa next challenges TSA's *Glomar* response, in which it refused to confirm or deny the existence of records that might indicate Mr. Magassa's status on a federal watch list. ECF No. 14, at 5. Mr. Magassa contends that TSA "rests on broad and conclusory assertions of national security without tying those assertions to relevant records or search locations." *Id.*

Again, the court disagrees with Mr. Magassa's characterization. As TSA explained in its *Glomar* response, "acknowledging the existence or nonexistence of records regarding [Mr. Magassa] would reveal whether he was or was not on a watch list utilized by TSA for passenger pre-board screening." Esteves Decl. ¶ 17. "Releasing an individual's status on a federal watch list used by TSA for passenger pre-board screening could enable terrorists planning an attack on an aircraft to identify operatives who have or have not previously been identified as a threat," and "[f]ederal watch lists remain effective tools . . . because their contents are not disclosed." *Id.* ¶ 18. In another of Mr. Magassa's FOIA cases, the D.C. Circuit affirmed the agency's use of a *Glomar* response concerning his placement or non-placement on a Federal

10

Bureau of Investigation watchlist where the agency proffered a similar explanation. *Magassa v. Fed. Bureau of Investigation*, No. 23-5235, 2024 WL 5221092, at *3 (D.C. Cir. Dec. 26, 2024). While that Court was considering a *Glomar* response under Exemption 7(E), its conclusion that the agency's justifications "more than meet the low plausibility bar" for invoking a FOIA exemption is equally persuasive when considering whether TSA properly asserted a *Glomar* response concerning this SSI under FOIA Exemption 3. *Id.*

\*   \*   \*

Accordingly, the court will grant summary judgment to TSA on its withholdings under FOIA Exemption 3.

### B.  Exemption 5

TSA redacted two pages—one sentence from one email and language from one document—pursuant to Exemption 5. Miller Decl. ¶ 19. Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The parties do not dispute that the withheld records are "inter-agency or intra-agency memorandums or letters," ECF No. 13-1, at 14-16; ECF No. 14, at 6-7, but they do dispute whether TSA has properly justified the redactions under either the work-product privilege or the attorney-client privilege. ECF No. 13-1, at 14-16; ECF No. 14, at 6-7.

Exemption 5's work-product privilege covers "documents and tangible things that are prepared in anticipation of litigation or for trial" by an attorney. Fed. R. Civ. P. 26(b)(3)(A); *see Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (affirming that Exemption 5 protects documents that would be privileged in ordinary civil litigation). To determine whether a document was prepared in anticipation of litigation, the court must ask "whether, in light of the nature of the

11

document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *E.E.O.C. v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999) (quoting *Senate of Puerto Rico v. U.S. Dep't of Just.*, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987)).  To meet that standard, "the attorney who created the document must have 'had a subjective belief that litigation was a real possibility,' and that subjective belief must have been 'objectively reasonable.'" *Nat'l Ass'n of Crim. Def. Laws. v. U.S. Dep't of Just.*, 844 F.3d 246, 251 (D.C. Cir. 2016) (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)).

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services.  The privilege also protects communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997) (internal quotation marks and citation omitted).  For the government, "the 'client' may be the agency and the attorney may be an agency lawyer." *Id.*

TSA explains that the redacted email and document were created during the course of administrative proceedings concerning the revocation of Mr. Magassa's SIDA credential and in reasonable anticipation of further litigation.  Miller Decl. ¶¶ 31, 31 n.4, 32.  Additionally, the redactions to the email are "limited [to] the attorney's mental impressions and analysis for the client following the administrative hearing concerning the security threat assessment," and the redactions to the document were "limited [to] the attorney's confidential advice to the Intelligence & Analysis Office on that matter." *Id.* ¶¶ 31-32.  Mr. Magassa contends that TSA's explanations are insufficient because TSA "merely recites the standard for the two privileges, rather than

demonstrating how those privileges apply to the withheld records." ECF No. 14, at 7. Again, the court is unpersuaded.

As it relates to both privileges, the court disagrees that TSA merely "regurgitate[d] the relevant standard[s]," as Mr. Magassa suggests. *See* ECF No. 15, at 5. In both the Miller declaration and the *Vaughn* index, TSA substantiated the bases for its redactions—including that the redacted information was authored by an agency attorney for an agency client, concerned the attorney's analysis or advice, and was generated in relation to an administrative proceeding and in reasonable anticipation of future civil litigation (which did, in fact, occur, *see Magassa v. Wolf*, 545 F. Supp. 3d 898 (W.D. Wash. 2021), *aff'd*, 52 F.4th 1156 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 279 (2023)). Miller Decl. ¶¶ 30-32, ECF No. 13-3 Ex. D, at 2-3. Accordingly, the court will grant summary judgment to TSA regarding its withholdings under FOIA Exemption 5.[3]

### C. Segregability

Mr. Magassa also contends that TSA did not reasonably segregate exempt and non-exempt information under FOIA Exemptions 3 and 5. ECF No. 14, at 8; ECF No. 15, at 3-5. TSA has a statutory duty to provide "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency is required to show with "reasonable specificity" that the information withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996). The agency "must specifically and thoughtfully" consider the foreseeable harm from disclosure of otherwise-exempt information. *Leopold v. U.S. Dep't of Just.*, 94 F.4th 33, 38 (D.C. Cir. 2024) (emphasis omitted). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably

---

[3] Because the court finds that TSA's explanations for its redactions are sufficient, it declines Mr. Magassa's request to review the documents *in camera*. *See* ECF No. 14, at 7.

segregable material," which must be overcome by some "quantum of evidence" from the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Mr. Magassa has not come forward with the requisite "quantum of evidence." *Id.* He contends that TSA did not "describe in detail 'which portions of the document[s] are disclosable and which are allegedly exempt." ECF No. 14, at 8 (quoting *Wilderness Soc'y v. U.S. Dep't of the Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004)).  But Ms. Miller explained that she had personally reviewed the records withheld under Exemptions 3 and 5 and concluded that "[t]o the extent possible, non-exempt responsive records and portions thereof have been segregated and released to [Mr. Magassa]," Miller Decl. ¶ 45, and Mr. Esteves explained that "the smallest possible portion of the record necessary to protect SSI" was redacted, Esteves Decl. ¶ 10.  The D.C. Circuit held that a similar explanation was sufficient in another of Mr. Magassa's cases, *Magassa*, 2023 WL 8826564, at *2, and this court sees no reason to depart from that conclusion here.

## IV.  CONCLUSION

For the foregoing reasons, the court will grant TSA's Motion for Summary Judgment, ECF No. 13, and deny Mr. Magassa's Cross-Motion for Summary Judgment, ECF No. 15.  A separate order will issue.

LOREN L. ALIKHAN
United States District Judge

Date:  February 20, 2025